IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHALL LOSKOT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE DOG HOUSE, et al.,<br><br>　　　　　Defendants. | Case No.: C-11-04867 JSC<br><br>**ORDER GRANTING DEFENDANT FRANCES GIRAUDO'S APPLICATION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

In this disability access case, Plaintiff brings claims against Defendant Frances Giraudo, the landlord of the subject property, and Giraudo's tenants, Defendants London Fish 'n Chips, En-Sheng Mao, and Glen H. Mao. (Dkt. No. 1.) Specifically, Plaintiff's Complaint alleges the following four causes of action against each Defendant: 1) denial of access by public accommodation in violation of the Americans with Disabilities Act; 2) denial of full and equal access in violation of California Civil Code §§ 54, 54.1, 54.3; 3) denial of accessible sanitary facilities in violation of California Health & Safety Code § 19955, *et seq.*; 4) denial of access to full and equal accommodations in violation of California Civil Code § 51, *et seq.* (*Id.*) Now pending before the Court is Giraudo's Notice of Settlement and Application for Good Faith Settlement ("Application") pursuant to California Code

of Civil Procedure Section 877. (Dkt. No. 21.) No party has objected to the Application. After carefully considering the filings in this case, the Court GRANTS the Application. The Court further VACATES the hearing on Application scheduled for January 24, 2013.

**LEGAL STANDARD**

California Code of Civil Procedure Section 877.6 permits a court to approve a settlement if it determines that the settlement was made in good faith. *See* Cal. Code Civ. P. § 877.6; *Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990) (holding that while the "section 877.6 procedures do not govern a federal action . . . the substantive provisions . . . are applicable"). A finding of good faith settlement between a plaintiff and "one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," releases the settling defendant "from all liability for any contribution to any other parties." Cal. Civ. Code § 877(b). While the settlement does not discharge any other party from liability, unless its terms so provide, "it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater." *Id.* at § 877(a). Section 877.6(a)(1) further provides that a determination of good faith settlement within the meaning of the statute applies only to "any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt." *See Forman v. Government Employees Ins. Co.*, 920 F. Supp. 1065, 1066 (N.D. Cal. 1996).

Section 877.6 reflects "two major goals": "the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 872 (1987). A good faith examination enables the court "to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). When making a determination that a settlement was made in good faith under section 877.6(a)(1), "the intent and policies underlying section 877.6 require that a number of factors be taken into account:" (1) a rough approximation of the plaintiff's total recovery and the settlor's proportional liability; (2) the amount paid in settlement; (3) the allocation of settlement

proceeds among plaintiffs; (4) the recognition that a settlor should pay less in settlement than he would if he were found liable after trial; (5) the financial conditions and insurance policy limits of the settling tortfeasor; and (6) the existence of collusion, fraud or tortious conduct intended to injure the interests of the non-settling parties. *See id.* "Practical considerations" require that the evaluation "be made on the basis of the information available at the time of settlement[,] and a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Id.* (internal citation omitted).

## DISCUSSION

As an initial matter, the Court finds that Section 877 applies to this action because Plaintiff's Complaint alleges that Defendants are "jointly and severally" liable for the access violations. (Dkt. No. 1 ¶ 9.) Landlords and tenants are jointly and severally liable for ADA violations where both the landlord and the tenant are persons who "own[], lease[] (or lease[] to), or operate[] a place of public accommodation." *See* 42 U.S.C. § 12181(a); *see also Botosan v. McNally Realty*, 216 F.3d 827, 832-33 (9th Cir. 2000) (finding that while a landlord and a tenant can allocate responsibility for ADA compliance in their lease, a lease cannot operate to eliminate a landlord's liability because allocation is effective only "as between the parties" and "has no effect on the rights of third parties"); *but see Kohler v. Bed Bath & Beyond of Cal., LLC*, 2012 WL 3018320 *3 (C.D. Cal. July 23, 2012) (distinguishing *Botosan*, and finding in favor of tenant on summary judgment, because the plaintiff did not show that tenant owned, leased, or operated the parking lot, which remained the landlord's responsibility).

Here, Plaintiff alleges that tenant-Defendants are liable for all architectural barriers, including those present in the parking lot. (*See* Dkt. No. 1 ¶¶ 32, 33.) Although the tenant-Defendants may not ultimately be responsible for the access barriers in the shared parking lot, for purposes of Section 877, it is enough that Plaintiff has alleged they are so responsible. *See* Cal. Civ. Code § 877.6(a)(1) (providing that "any party to an action in which it is *alleged* that two or more parties are joint tortfeasors") (emphasis added). Moreover, Plaintiff's allegation that Defendants are jointly and severally liable for all of the access violations satisfies the "joint tortfeasor" requirement, which is construed broadly. *See Topa Ins. Co. v. Fireman's Fund Ins. Cos.*, 39 Cal. App. 4th 1331,

3

1341 (1995) ("In many cases courts have construed the term joint tortfeasor, as used in Code of Civil Procedure sections 877 and 877.6, quite broadly to apply not only to those who act in concert in causing an injury but generally to joint, concurrent and successive tortfeasors, and even more generally to all tortfeasors joined in a single action whose acts or omissions concurred to produce the sum total of the injuries to the plaintiff.") (internal quotation marks and citations omitted); *see also Bob Parrett Const., Inc. v. Superior Court*, 140 Cal. App. 4th 1180, 1188 n.5 (2006) (applying Section 877 to federal False Claims Act and Anti-Kickback Act claims where both statutes "may give rise to joint and several liability").

Turning to the terms of the settlement and the application of the *Tech-Bilt* factors, the Court finds that those factors favor approval of the settlement agreement. The terms of the settlement agreement are: a mutual release and waiver under California Civil Code Section 1542, dismissal of Plaintiff's Complaint as to Giraudo with prejudice, payment of $25,000 from Giraudo to Plaintiff, and assignment to Plaintiff of any all rights Giraudo "may have in contract or equity against the other defendants and tenants related to this litigation." (Dkt. No. 24, Declaration of Brendan J. Dooley in Support of Application, ¶ 4.)[1]

Giraudo's payment of $25,000 is consistent with a rough approximation of Plaintiff's total recovery and Giraudo's proportional liability. The Application states that Plaintiff made a "global demand" of $52,100, of which $20,050 could generously be allocated to Giraudo.[2] (*Id.* ¶ 14.) Giraudo contends that this is a fair approximation of her proportional liability because the lease between she and her tenants place liability for maintaining accessibility on the premises with the tenant. Although the Court makes no definitive reading of the lease, it can be read to require the tenants to indemnify Giraudo for liability she incurs as a result of the tenants' accessibility violations on the premises. (*See* Dkt. No. 24, Ex. A, Lease Agreement between Giraudo and Barry Van Otten, § 5.5); *see also Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1034 (1990) ("In

---

[1] Because the parties have not provided the Court with a copy of the settlement agreement, the Court's examination of the settlement, and its conclusion that the settlement is made in good faith, is accordingly limited to those terms provided in the Dooley Declaration.

[2] The Application also states that Plaintiff demanded from Giraudo $10,800, which was based on "her individual responsibility for the repair of common area items (signage and parking)." (*Id.* ¶ 8.)

evaluating the settling defendant's potential proportionate liability for purposes of this determination of good faith, the trial court must take into account any contractual relationship between the settling and nonsettling defendants, and must consider how each party's performance of its contractual obligations relates to its share of liability."). At the same time, Giraudo appears individually responsible for maintenance of, among other things, the parking lot, and ensuring that it complies with "all municipal requirements." (*Id.* § 9.) Although the tenant is provided "with the non-exclusive right to use the parking lot for Lessee's customer parking," the parking lot does not appear to constitute part of the "premises." (*Id.* § 1.) Therefore, by restricting Giraudo's liability to just the parking lot, her payment of $25,000 to Plaintiff is not "grossly disproportionate" to what a reasonable person would estimate her proportional liability to be. Indeed, even if Guraudo is 100% responsible for Plaintiff's injury, the payment of almost half of Plaintiff's total settlement demand would not be "grossly disproportionate." This *Tech-Bilt* factor is accordingly satisfied.

The Court further finds that none of the other *Tech-Bilt* factors weigh against finding a good faith settlement. There is no evidence of collusion, fraud or tortious conduct between Plaintiff and Giraudo.

## CONCLUSION

For the reasons stated, the Court GRANTS the unopposed Application for Good Faith Settlement.

IT IS SO ORDERED.

Dated: January 23, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE